IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RILEY CARROLL and<br>JENNIFER CARROLL,<br><br>    Appellants/Plaintiffs,<br><br>v.<br><br>KEY BANK,<br><br>    Named non appearing<br>    Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:10-cv-01055-CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

Plaintiffs have appealed under 28 U.S.C. § 158(a)(1) from the order of Bankruptcy Judge R. Kimball Mosier denying in part the Plaintiffs' Motion to Enter Default Judgment Against Defendant Key Bank in an unopposed, uncontested bankruptcy adversary proceeding. For the reasons set forth below, the court reverses and remands this matter to the Bankruptcy Court to strip off and void the Key Bank loan under 11 U.S.C. § 506(d).

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a). Venue is appropriate in the Central Division of the District of Utah under 28 U.S.C. §§ 1408 and 1409. This is a "Core" proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), and (O).

There are no contested issues of fact in this appeal, only questions of law. This court reviews the legal conclusions of the Bankruptcy Court *de novo*. *See In re Albrecht*, 233 F.3d 1258, 1260 (10th Cir. 2000); *In re Herd*, 840 F.2d 757 (10th Cir. 1988).

## BACKGROUND

Appellants and Plaintiffs Riley Carroll and Jennifer Carroll (the "Carrolls") borrowed money from three financial institutions from January, 2007 to May, 2007. The CitiMortgage, Inc. loan carries a present balance of $171, 382.83, the Citibank, NA loan a balance of $42,599.04, and the Key Bank loan a balance of $21,635.98. The Carrolls pledged for the foregoing loans their principal residence, located in West Jordan, Utah, the fair market value of which is now no more than $180,000. Therefore, as the Bankruptcy Court found, "Key Bank has no secured claim in this case." Memorandum Decision on Plaintiffs' Motion for Default Judgment Against Defendant Key Bank ("Memorandum Decision"), at 4 (Dkt. No. 14 in *Carroll v. Key Bank* (*In re Carroll*) Ch. 13, Case No. 10-20642, Adv. No. 10-02259 (Bkrtcy. D. Utah Oct. 1, 2010)).

The Carrolls filed Adversary Proceeding No. 10-02259 on March 29, 2010 seeking to have the Key Bank loan declared void and "stripped off" under 11 U.S.C. § 506(d). "Stripping off" is a process by which a secondary lien is determined to be entirely unsecured by any collateral and is then treated as unsecured debt during the bankruptcy process. *See In re Griffey,* 335 B.R. 166, 169 n.1 (B.A.P. 10th Cir. 2005); *In re Fitzmaurice*, 248 B.R. 356, 357 n.2 (Bankr. W.D. Mo. 2000). In contrast, a loan might be "stripped down" when it is determined that the collateral is less than the value of the loan, and the lien is split into two portions: one part, equal

to the value of the underlying property, is secured, while the remainder of the loan becomes unsecured debt. *See Griffey*, 335 B.R. at 169 n.1; *Fitzmaurice*, 248 B.R. at 357 n. 2. Thus, "stripping down" applies to undersecured liens, while "stripping off" applies to those which are wholly unsecured.

The Bankruptcy Court, relying on *Dewsnup v. Timm*, 502 U.S. 410 (1992), held that "because § 506(d) does not allow a debtor to 'strip down' a creditor's lien if the creditor has a claim that is allowed pursuant to § 502, a debtor may not 'strip off' a creditor's lien if the creditor has a claim that is allowed pursuant to § 502." Memorandum Decision, at 6  7. The Carrolls appealed the Bankruptcy Court's decision pursuant to 28 U.S.C. § 158(a)(1).

## ANALYSIS

**I.    A DEBTOR MAY "STRIP OFF" A WHOLLY UNSECURED LOAN UNDER § 506(d) IN THE CHAPTER 13 CONTEXT**

The applicable provisions of the Bankruptcy Code at issue are 11 U.S.C. §§ 506(a)(1) and 506(d):

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
>
> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless

>(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
>
>(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

Because the fair market value of the Carrolls' residence is less than the total owed on the CitiMortgage and Citibank loans, Key Bank's interest in the collateral has no economic value, and, thus, the loan with Key Bank is completely unsecured pursuant to § 506(a).

§ 506(d) provides that "to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void." 11 U.S.C. § 506(d). By its terms, § 506(d) does not void a lien if it is an "allowed secured claim." *Id.* If a lien remains even partially secured, it cannot be avoided under this provision. In contrast, if a claim is *wholly unsecured,* then there is, by definition, no allowed secured claim, and § 506(d) declares that such liens are void.

In reaching its holding that §506(d) *does not* void the Key Bank loan, the Bankruptcy Court relied upon the holdings of *Dewsnup v. Timm*, 502 U.S. 410 (1992) and *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993). The court, however, did not differentiate between the strip down of partially secured claims, prohibited by *Dewsnup* and *Nobelman*, and the strip off of a wholly unsecured loan.

In *Dewsnup*, the Supreme Court held that, in the Chapter 7 context, "§ 506(d) does not allow petitioner to 'strip down' respondents' lien." 502 U.S. at 417. This holding clarified the relationship between §§ 506(a) and 506(d), and rested upon a determination that a chapter 7 debtor cannot void a lien under § 506(d) when the lien is undersecured by application of § 506(a). *Id.* In making its ruling, the Court specifically commented on "the difficulty of

-4-

interpreting the statute [§ 506] in a single opinion that would apply to all possible fact situations," and stated it was focusing only on the dispute before it. *Dewsnup*, 502 U.S. at 416 17 ("We therefore focus upon the case before us and allow other facts to await their legal resolution on another day."). The *Dewsnup* court never addressed the effect of § 506(d) to a wholly unsecured lien, or to a case in the Chapter 13 context. *Id.* at 417.

A year later, the Supreme Court again revisited § 506(d), in *Nobelman v. American Savings Bank*. This case addressed the effect of the statute in the context of a Chapter 13 bankruptcy. *Nobelman*, 508 U.S. at 332. Again, the Court determined that one cannot bifurcate, or strip down, a partially secured loan. *Id.*

Both *Dewsnup* and *Nobelman* address the issue of whether an undersecured claim may be bifurcated into unsecured and secured portions so that a partial avoidance of a lien may occur. The holdings of *Dewsnup* and *Nobelman* are in accordance with the wording of the statute, as it does not refer to partial avoidance of a lien. Instead, it states that "to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void." 11 U.S.C. § 506(d). Although *Nobelman* extended *Dewsnup* to the Chapter 13 context, it still dealt with stripping down an undersecured loan. In the current case, the Bankruptcy Court extended the holding of *Nobelman* beyond its original scope, applying it to prohibit the *strip off* of a *wholly unsecured* lien. The court concludes such an extension is not appropriate under present Tenth Circuit law.

Some circuit courts have extended *Dewsnup* to prohibit a lien being stripped off in Chapter 7 bankruptcies. *See In re Haberman*, 516 F.3d 1207, 1213 (10th Cir. 2008) (discussing

case law from the Fourth and Sixth Circuits). Nevertheless, most circuits permit such loan stripping in the context of Chapter 13. *See In re Thompson*, 352 F.3d 519 (2d Cir. 2003); *In re Lane*, 280 F.3d 663 (6th Cir. 2002); *In re McDonald*, 205 F.3d 606 (3d Cir. 2000); *In re Bartee*, 212 F.3d 277 (5th Cir. 2000); *In re Tanner*, 217 F.3d 1357 (11th Cir. 2000); *In re Mann*, 249 B.R. 831 (B.A.P. 1st Cir. 2000); *In re Lam*, 211 B.R. 36 (B.A.P. 9th Cir. 1997). The Tenth Circuit has not directly addressed the question of whether a wholly unsecured loan can be stripped off in a Chapter 13 proceeding, yet it has stated in dicta that it is inclined to follow other courts of appeal who have declined to extend *Dewsnup* "well outside the statutory context in which it was decided." *Haberman*, 516 F.3d at 1213 (citations omitted). In *Haberman*, the court agreed with the reasoning of other circuit courts that "to prohibit lien stripping in reorganization cases would be inconsistent with pre-Code law, with key statutory provisions and principles applicable in the reorganization chapters, and with *Dewnsup's* own admonition that it should be read narrowly." *Id.*; *see also In re Geyer*, 203 B.R. 726 (Bankr. S.D. Cal. 1996) ("There is neither a logical or rational basis for a creditor holding a completely unsecured claim to be protected from claim modification in a bankruptcy case simply because the creditor had obtained a lien on the homestead prepetition.").

Moreover, the Bankruptcy Court in this District has previously permitted lien stripping in the Chapter 13 context where the creditor's claim is wholly unsecured. In one decision, the Bankruptcy Court held that, in a Chapter 13 bankruptcy, "when there is no equity in the property . . . then the claim is an unsecured claim and the lien is voidable under § 506(d) and can be 'stripped' from the residence." *In re Pierce*, 282 B.R. 26, 29 (Bankr. D. Utah 2002). Other

bankruptcy courts within the Tenth Circuit have agreed.  *See In re Samala*, 295 B.R. 380, 382 (Bankr. D.N.M. 2003); *In re German*, 258 B.R. 468 (Bankr. E.D. Okla. 2001); *In re Lee*, 161 B.R. 271 (Bankr. W.D. Okla. 1993).  Accordingly, the court concludes the Bankruptcy Court erred in holding that strip off of a lien in the Chapter 13 context is prohibited in this Circuit.

II.     **THE ANTI-MODIFICATION CLAUSE FOR RESIDENTIAL MORTGAGES IN 11 U.S.C. § 1322(b)(2) DOES NOT PREVENT MODIFICATION OF THE KEY BANK LOAN**

The Bankruptcy Code permits a Chapter 13 debtor to "modify the rights of holders of secured claims, other than a claim *secured* only by a security interest in real property that is the debtor's *principal residence*." 11 U.S.C. § 1322(b)(2) (emphasis added).  The Carrolls pledged their home as collateral for the three loans discussed above, including that of Key Bank.

In *Nobelman*, the Supreme Court held that "§1322(b)(2) prohibits a Chapter 13 debtor from relying on § 506(a) to reduce an *undersecured* homestead mortgage to the fair market value of the mortgage residence." 508 U.S. at 325 (emphasis added).  In other words, debtors cannot "strip down" liens attached to their home.  Subsequent to the *Nobelman* decision, a split of authority has arisen among courts as to whether or not the anti-modification clause applies to *wholly* unsecured mortgages or liens, as opposed to those *partially* secured.

Following the majority of courts, the Tenth Circuit Bankruptcy Appellate Panel has held that the statute dictates that "the antimodification clause of § 1322(b)(2) does not apply to the holder of a wholly unsecured claim." *In re Griffey*, 335 B.R. 166, 169‒70 (B.A.P. 10th Cir. 2005) (citing and agreeing with case law from the Second, Third, Fifth, Sixth, Ninth, and Eleventh Circuit Courts of Appeals, as well as bankruptcy court decisions from the First, Seventh, and

Tenth Circuits). In accordance with the Tenth Circuit's opinion in *Griffey*, the anti-modification clause for residential mortgages in 11 U.S.C. §1322(b)(2) is not applicable here because the Key Bank loan is wholly unsecured, and thus, the loan may be voided under § 506(d).

## CONCLUSION

The equity value of the Carrolls' property does not exceed the secured claims of the CitiMortgage and Citibank loans, and therefore, Key Bank's claim is wholly unsecured under section 506(a). Because the claim is wholly unsecured, Key Bank's loan is void under section 506(d) and should be "stripped off." Although the Carrolls' home originally served as collateral for the Key Bank loan, the loan is no longer secured by a security interest in the residence, and section 1322(b)(2) does not apply to prevent this result. Consequently, the Bankruptcy Court decision is REVERSED.

DATED this 16th day of December, 2011.

BY THE COURT:

_____
Clark Waddoups
United States District Judge